Good morning, Your Honors. May it please the Court, Mark Grimald for the appellant, William Pickard. I'd like to reserve three minutes for rebuttal. Four errors occurred in the proceedings below. Each of them requires a judgment below to be vacated and the case sent back to the District Court. I'd like to start with what I would like to ask. Before you launch into that, I want to ask sort of a real-world question. The District Court in Kansas has ordered the unsealing of the case stand in the Tenth Circuit. What is the timeframe on that? Well, as I understand it, the District Court just ordered the file unsealed and it was stayed. The government will have a better oversight. Right, right. But it's going to go to the Tenth Circuit, right? I think that's respectfully a question that the government would be in a better position to answer. Okay. Well, I thought that they had already done that, but maybe not. They can answer that. But I guess the question for you is, should we await what happens in that case? Because if you get the material there, we don't have to decide, it seems to me, all the hard issues you've presented us with here. So what is your sort of practical response about whether we should wait for the ultimate conclusion of that proceeding? So I have two practical responses and one legal response. Okay. The first practical response is that until records are actually disclosed, our position is the Kansas proceedings have no effect on this case. So we are still interested in the material. We have a legal right to the material. So from our perspective, it doesn't change anything. Second of all, I don't know for certainty. I know the government has represented that there's a large overlap in the material. I don't actually know that. I've never seen the informant file that's sealed in the Kansas case. All I know are, you know, and I've never seen any of the files that are at issue in this case. All I've seen is the government's Vaughn Index describing some of the files. I think it's likely that there is some overlap, but it may not decide all the issues that this case presents. And then third, from a legal, as a legal matter, I don't see how the unsealing would actually change the government's legal position in this case. Well, it might not, but it would seem to me that it would be moot. Let me, for the purpose of this question, I want you to assume that the files are identical. There's a CI file of this person here, and it's sealed, and there's the same CI file in Kansas about the same person and the same transaction. If you get the material in one context, why do we have to decide anything? Because you already have the material. Because the ultimate relief that you're seeking is the material. I mean, I know you want to make good, make law, but. If there was perfect overlap, then I think it's. It would moot it. Practically speaking, it might moot it. Okay. I think we would still take the position that we're legally entitled to it under the statute. My client has a Federal statutory right to this information, and, you know, I think just because practically speaking. But if you had the information, there would be no longer a case of controversy. If your position here is I need X and you already have X, we would normally not continue to have the discussion about Y. If the government provided it to my client, you know, pursuant to FOIA, then you're right. It would moot it. Regardless of FOIA, if they. . . that's what I'm trying to get at. If they did it pursuant to a court order somewhere else based on whatever theory, I would think this would be moot. It's possible, and I understand. I understand the Court's, you know, hesitance about wanting to address some of these issues. But I should also flag for the Court that information has been unsealed in the Kansas case already, and the government has just not released it. So the fact that the district court has ordered them to release information, from my perspective, doesn't change anything. And I'd encourage. . . this case has gone on for 10 years now. I'd encourage this. . . If it's unsealed, why haven't you gone to get it? Your Honor, my client. . . I mean. . . I don't represent. . . I guess I don't understand why. . . Well, and the government hasn't given it to me, so it's not a problem. I have the same kind of questions that Judge Graber did about this. It seems to me that I'm invading, to some extent, what's happening in a Kansas criminal case. I'm doing it totally on FOIA. And I'm saying to myself, if he gets what he needs in that Kansas criminal case, why am I going to go in here? So should I wait until that Kansas criminal case gets done before I do anything here? So two more. . . I mean, that's my worry. So to address your question about why we haven't gone to Kansas and asked for it, my client. . . I don't represent him in Kansas. Right now, I believe he is representing himself. He has requested that the material that was unsealed be filed on the docket so he could get it. And as far as I know, that never happened. So that's the first response. The second response is that there is actually an order in Kansas barring my client from seeing the file. So, you know, short of me taking on the representation in Kansas. . . And we thank you for doing that. That presumably counsel could. But, you know, the length of time is interesting, but your client is serving a life term. And in some ways, this whole thing seems extremely abstract in the sense of what's he going to do with it, that he doesn't already know. I mean, he knows the name of the individual already. And to say, well, I know his name, but tell me his name seems a bit odd. So that's just me speaking about my own kind of reaction to it. You know, I can't make excuses. I can't apologize for my client trying to avail himself of a federal statutory right. Oh, I understand. I completely understand the court's looking at the practical questions the court has. But the fact of the matter is my client requested this information a decade ago. He has been stonewalled at every step of the way in two different fora, right, here through FOIA and in Kansas. The unsealing was a result of his inability to get the information through FOIA. So if I could, I'd like to actually turn to the merits of the case. Well, that's good. It's my understanding that you're not challenging the determination that these are law enforcement records or information, correct? No, we haven't. So we're really talking about whether Skinner is a confidential source. That's right. And whether the DEA waived the right to protect the information. Are we really looking at that? Well, one way to look at it is whether or not it was a waiver. I think if I could encourage the court to analyze it in terms of the assurance of confidentiality that was provided to Skinner at the time he provided the information. I think that's the best analysis to kind of reconcile all the competing. And even if he's a braggart later, that doesn't show that the government didn't promise him confidentiality. That is true. Skinner himself can invoke the immunity that he was provided, talk to everyone about his work as a source. But the evidence that shows that the assurance of confidentiality was invalid is the fact that the government compelled Skinner to testify. There's no way to reconcile that contradiction. Sure there is. I don't understand that. And if, you know, on day one they say, you know, we're going to ensure that you're confidential, and two years later they come to a different conclusion, I'm not sure why that back casts to what they did or didn't say originally. Well, I think it goes to the legitimacy of the assurance. Well, it may show that the government is, you know, trying to have it both ways. But it doesn't prove that they didn't make the assurance initially. They may not have lived by it, but it doesn't prove they didn't make it. And that's my issue with your argument, I guess. In Irons and in the First Circuit, and in Irons and in the Third Circuit in Lame, both those courts recognized that a source's later public testimony could be evidence that the assurance of confidentiality provided by the government was invalid or incomplete or was meant to only encompass providing information up until the point that that information was disclosed at trial. So let me ask you a question. Do I owe any deference to the district court in its determination that the DEA explicitly assured Skinner confidentiality? No. Review in FOIA cases is de novo. But is there no factual determination where I would have to say the district court cannot be overturned from its factual determination for clear error, even though I can de novo consider what the decision is after determining that? There was no factual finding that the DEA assured Skinner confidentiality. The district court did say that that happened, and they cited to the government's affidavit. Well, I thought that was pretty much a factual finding. Well, there was no weighing of competing facts. We have the source agreement that Skinner signed because he filed it in another case. And I don't, again, I don't really know how to reconcile the fact that Skinner, you know, the government said that they would try to protect Skinner's identity in the source agreement, and then the district court can find that they expressly assured him that he would be confidential. And I should also, one other point is that. Well, so, I mean, the thing is, is that in Pickard, in the 2011 case, Pickard, we said when the information has been either officially acknowledged or officially confirmed, an agency is not precluded from withholding the information pursuant to an otherwise valid exemption. So then it seems to me that we're bound by that. And so what we're really trying to find out here is, is this a valid exemption? Certainly an assurance of confidentiality is such. And so if there was one, are we looking to see whether it was an express assurance? Are we looking, what are we looking for? So I'd like to address that in two ways. The first is to go back to your earlier point about deference and whether or not that's required. This Court has already determined in Rosenfeld that the assertion that a coded source is assured confidentiality is inadequate for Exemption 7D purposes. And that was all the district court cited to determine that an assurance of confidentiality had been provided. So this Court has already held that as a matter of law, that's inadequate. So... But that's not all that happened here. It is, actually. All the district court said was... Well, if it's de novo review, I can look at the evidence here. There was a confidential source agreement and there was a confidential file. In both of those, as I understand it, the USA said they'll strive to protect my identity. Strive. I think in most cases strive would be sufficient. And then on the confidential file, the DA will use all lawful means to protect the identity. And there's also a declaration about coded confidential information. I guess I'm trying to figure out why that is an express assurance of confidentiality. I think, well, first of all, on the implied fact, you know, well, actually... This isn't an implied case. This is an express case. Well, I don't know how it can be both an ex – how Skinner can be expressly assured confidentiality and then be forced to publicly testify. That's a contradiction that doesn't seem recognized. But I don't understand why it makes the original promise maybe not fulfilled, but it doesn't make it any less express. If I promise to bring you a cup of coffee and I don't do it, it doesn't mean I didn't promise it. I just didn't do it. It makes the promise invalid. And I submit that the Court should not be sanctioning invalid promises made on behalf of the government. I see I'm eating in my time. You're really asking us to sanction the government for what they did. I don't think that's – you have any right or any standing to even do that. Skinner might, but you don't. What you're really asking us to do is say because the person has testified someplace else, now you can release the government of its assurance. And I don't find any law that says I can, and I'm trying to find that. That's why I continue to ask you these questions. Well, the law, both Irons and Davis and the D.C. Circuit squarely support the proposition that we've made here that when a source publicly testifies, that is evidence that the assurance was invalid. So Irons is your best case? Irons is. And I submit that the government does not have a case. Because I've read Irons, I'm not sure that's your best case. But, no, go ahead. The government does not have a case that goes as far as what they're asking this Court to do. I am not familiar with a single case where a Federal informant has testified publicly and then the government has been able to withhold all of that information from disclosure. In both Irons and in Davis, the government conceded and released the information that was actually disclosed. But in Irons, didn't the Court actually hold, and I may be misremembering this, that the mere fact that the person had testified publicly did not release the information under the FOIA exemption? The Court held that it did not reach the hypothetical scope of cross-examination. Okay? So it said that information revealed in public had to be disclosed, but that information within the hypothetical scope of cross-examination, which is far broader, obviously, that did not have to be disclosed. We'll give you some rebuttal time. We've used a lot of it. We'll hear from the government. May it please the Court, Ellen London on behalf of the government. I suspect the Court would like to start with some questions about Kansas. Yes. Good guess. The issue of whether the case is going to the Tenth Circuit is, as far as I know, I have not heard that the Solicitor General has made a decision yet. So we don't know if it's going to be appealed as of now. I think there's 30 days. But it's in a strange interlude where there's an order unsealing it, but the order has stayed. It stayed pending appeal, Your Honor, and I believe the Solicitor General has 30 days in a criminal matter. So if I understand your answer to this, if the government decides not to appeal, the stay will be lifted and the material must be disclosed. Is that correct? That's correct, Your Honor. The information will be unsealed. And if there's an appeal, presumably the Tenth Circuit, having had this bounced back a couple of times to them already, will have it again and decide whether the material must be unsealed. That's correct, Your Honor. Okay. Now, in terms of what that means for us, what does that mean for us? I don't believe it changes anything for this case. As a practical matter, as was discussed with Piggott's counsel, obviously if the Solicitor General decides not to appeal the case and the documents are unsealed, for practical purposes, he has the vast majority of the documents that are at issue in our case. It is up to him. But not all of them? Not 100 percent. And I'm happy to provide, if it's helpful to the Court, whatever details around the edges, the differences of the files. But my understanding, having not seen the Kansas files, is that it's pretty much the same with some minor exceptions. So as a practical matter, it would be up to Piggott at that point as to whether to continue this FOIA case. From the government's perspective, you know, the case would go forward or not as counsel pointed out. Other than the fact that he would have the documents, if this Court were to reach the public domain exception issue, which the government does not believe it should, obviously the facts are a little bit different in terms of him actually having the documents. So if he had, if the documents were identical, wouldn't it still moot this case? Because what relief a FOIA request seeks is information. And if you have the information already, then wouldn't that moot it? I don't believe it would actually moot the case because of the way that 70 is structured and the waiver issue, such that if there is a release of the documents under 70, if there's a release in another forum, the government's still not obliged under 70 to make a FOIA release of the file. No, but from the plaintiff's point of view, what would be left of the relief? Wouldn't it all be theoretical at that point? I think if the plaintiff is seeking to make laws, as Your Honor pointed out. But, yes, as a practical matter, it's, I don't know if the legal word is moot, but, yes, he would have the documents. The part of your argument that, and what the district court did that baffled me was the ruling that some of the categories of information had been abandoned. I honestly didn't understand that because, and I may be misunderstanding the record, so I hope you'll correct me if I'm wrong about this. It seemed to me that there were several categories requested, and then the plaintiff sought partial summary judgment as to some. That happens a lot in civil litigation, and it doesn't mean that you've abandoned all your other claims. It just means you want a ruling as a matter of law on a couple of them, and the rest of them will continue on. So why did the court hold that that was abandoned, and was that right? That was correct, Your Honor, and that is something that is judged under the abusive discretion standard because it is within the management of litigation, which is obviously a very generous standard. Isn't that true? If someone files a tort claim and a contract claim and they ask for partial summary judgment on their contract claim, the district court can just say, well, they've abandoned their other claim? I mean, isn't that just wrong as a matter of law? Well, the district court judge in this case has a rule against seriatim summary judgment motions. Well, all that means is you don't get another summary judgment motion. It doesn't mean you don't get a trial. Well, there's no basis for a trial in this case. So I think the only option going forward, practically speaking, would be another summary judgment motion, which is prohibited by the judge's rules. But in addition to the judge's rules, there's also an issue of waiver because all of the documents were sent to the magistrate judge for review. The district court was very clear that he wanted the magistrate judge to review all the documents. The magistrate judge issued a ruling that specifically compelled release of the three categories and said the government may redact the rest of the information. The government objected to that ruling, but Pickard did not. Pickard, at that point, waived his rights to continue challenging those other documents. Simply because in that particular situation, the magistrate had made a ruling. Pickard abandons his right to challenge for the other documents? Well, the magistrate judge made a ruling as to all of the documents, and Pickard chose not to object to that ruling. Okay. You're saying the failure? Okay. So you're saying something a little different than actually what the district court said. You're saying that once the magistrate judge's recommendation, report and recommendation came out, the failure to object is a waiver of the objections that could have been made at that time? That's correct. And you're correct, Your Honor, that the district court judge rejected, but then sort of later adopted this argument. But there are two bases for this waiver argument. One is the argument that the government has put forward about waiving by not objecting to the magistrate judge's opinion. Then there's the judge's rule against Siri Adams' summary judgment motions. Both support. I guess I'm trying to figure out. So a magistrate judge takes a decision in front of it, which would normally be made by the district judge, gives a recommendation, and because the party doesn't object to that, the party can't ever go back on that? That's correct, Your Honor. What would have made it clear that the magistrate judge was going to decide those issues? I mean, at that point, hadn't the district court rejected both motions for summary judgment and then just submitted the documents to the magistrate judge for review? That's correct. The district court judge had made it clear that he was sending the entirety of the file to the magistrate judge. To be fair, the magistrate judge did say, I am only ruling on the three categories that Pickard had. That's what bothers me. It seems to me in this particular matter, he didn't really make a final order. Well, he did say the government isn't . . . I mean, it's clear. It's clearly written at the end of his order. The government is entitled to redact the remaining information. What would Pickard have objected to as far as the magistrate judge's ruling if the magistrate judge ruled on the three issues and concluded that Pickard was entitled to that information? What was there to object to? To object to the redaction of all the remaining documents and said that we need a ruling on these documents, these remaining categories. And it would have been clear to him that he had to do that. Because it seems to me that it would have been, okay, we got this decision, we're going to go up on this decision, but these other issues are left to the side. They're left to be determined at another time. I don't know how he could have got the idea he had to do something about that. Well, again, I mean, the language, you know, the government's entitled to redact all of the remaining documents. It is clear that those documents do not need to be released when they had been sent to the magistrate judge for review. Did he need to appeal? He'd need to object? To object. What if he had appealed to us that decision? Would we still have that in front of us? I mean, he doesn't say anything to object to the magistrate, but he appeals the district court's decision, and that part of the district court's decision that did what the magistrate said. I mean, my worry is that we've lost. You're requiring the person who has a magistrate judge's decision, some parts of which he likes, some parts of which he doesn't like, to object to the ones he doesn't like all the time, even though it's going to go to the district court, and all of that's going to come ahead because he must preserve. Yet he could say, well, I don't want to object. There's some parts I like, some parts I don't, but I won't, and then go to the district court, and the district court undoes what the magistrate does. Then he appeals that. It seems to me he's appealing everything. And, therefore, he doesn't lose any right. That is generally the rule, though, that if something is referred to a magistrate judge and there's some objection to it, you have to raise that objection before it goes then back to the district court, before it goes up to the court of appeals, so that it's not going up and down, up and down over every little issue. I guess I've got to look at that. I've never thought about that in my practice. I never have. So I'll look at that. I understand your argument. I just don't know whether I agree. Practically speaking, depending on how this Court rules on the 7D issue, as Judge Barr pointed out, if the three categories are exempt, it's difficult, if not impossible, to see why the other categories would not be. So sending it back would be, I mean, there's some sense that sending it back would be a futile exercise, depending on how this Court rules on the underlying issues. Because we appear to have de novo review, could we consider the remaining types of information ourselves without remanding it if we think that the district court improperly considered those to be abandoned, or is there a further record to be made? I'm thinking, Your Honor. Yeah, I mean, I'm just thinking out loud, too. No, it's an interesting question because the appeal is of the judgment below, but it is de novo review. I can't think of a . . . It seems a little procedurally odd to me, but I can't think of a reason why . . . Well, it does to me, too. But I just wanted to know your thoughts about it. On the other hand, it seems inefficient to send this case back yet again when the Court has the documents and there is de novo review. But it seems a little . . . It strikes me as a little bit of an odd procedural step. I'm happy to think about that some more and submit further briefing if that's helpful, about whether that would be proper. So if we get to the first issue, your opposing counsel says, all I've got to do is look at Irons and the decision is pretty easy. I should give you the documents or give him the documents. What do you say about Irons? Irons is also our best case, I would say. That's what I was going to say. That's why I didn't ask him about it. I wanted you to give him the business. Irons is the reasoning and rationale of Irons clearly supports a finding of no waiver of the information. That's what every circuit has held since then, circuits that have held that there's no waiver, even if there's subsequent testimony. Irons reserved the specific question of precise testimony, as the First Circuit said in Moffitt. So Irons did not reach the question. But, again, it's rationale, it's reasoning, squarely support the idea that there should not be a waiver of 7D. I'd like to address the express versus implied issue, if that's acceptable to the Court. This was clearly an express assurance of confidentiality. There is evidence in the record at ER 266 in the declaration that Judge Graber referenced. That is all that is required. In the Wiener case, the circuit had said that express assurance of confidentiality is, and I quote, virtually unassailable, meaning that all the agency has to do is show that the assurance was given. Here we have clear evidence in the record that the assurance is given. I would also note, Counsel brought up the Rosenfeld case. The Rosenfeld case is distinguished here because in Rosenfeld, they found there was not actually evidence put in by the government of the assurance of confidentiality, which, again, we have here in the record, which is supported by the Halperin case out of the Second Circuit, that all you have to do is put in the exact kind of information that was given. That was provided here. I see that I'm coming to the end of my time. Does the Court have further questions? I have no further questions. I don't believe that I do either. Thank you very much. Thank you. Mr. Reumold, you may have some time. If I could, I'd like to make two points. The first is to address the question of waiver. I'd recommend page 21 of our reply brief. I think that lays out kind of the scenario that arose after the magistrate's order. The crux of it, of the issue, is that we didn't know what information the government would disclose as a result of that order, so it was impossible for us to, or it didn't make any sense for us to appeal, and that's exactly what the District Court recognized. But I'd like to actually spend the majority of my time talking about irons. Before you get to that, what is your response to my question about whether, if we agree that there was no abandonment of the additional forms of information, whether that's something that we can or should decide de novo now? Well, so the court absolutely should decide it de novo. I take your question to be whether or not we can order information disclosed as a, you know. Well, whether there's a remand required if we were to agree that those issues were not abandoned. Is a remand required or not required? I think if the court determines that no withdrawal occurred of the claims, then this court could absolutely order the information disclosed. If it wanted to remand in order to allow the District Court to kind of parse what. And if we disagreed with you, could we order it not disclosed? I mean, you need to think about both possibilities. I'm really asking a procedural question, not a results question. The court's review is entirely de novo. So we could do it. The court could say yes, that we have withdrawn our claim to that information. No. You misunderstand my question. If we agree with you that the claims are still alive, are we required to remand an analysis of that in the first instance to the District Court? Or can we take a fresh look here, regardless of whether we end up agreeing or disagreeing with you on the merits of the claims? Because there are so many different exemption claims at issue, and we've only briefed I would submit that the court should probably remand it to the District Court so that we can brief the application of the exemptions to the different categories of information, and then the court can reach rulings on that. All right. Now for irons. We'll give you a minute to wrap up on irons. So with irons. Judge Smith, I know you said that it would be easy to look at irons and decide this case. I don't mean to suggest that it would be easy. What I think is important to know is that the government, none of the cases that the government relies on go as far as what the government is asking this court to do. What I think the best way in kind of synthesizing and making a coherent, and admittedly the cases are a little confused, I think, in some of the rationales, but I think the best way to make a coherent analysis of all of them is looking to irons. Irons holds that Exemption 7D applies when a source testifies at trial. The government can withhold information that was not actually disclosed at trial, but that was within the hypothetical scope of cross-examination. That hypothetical scope of cross-examination is not what we're asking for here. We're asking only for the information that was disclosed at trial and that is also contained in withheld records. So that is entirely consistent with irons. It's also – I'm sorry, my – I'm well over my time. You're well over your time. So if you'd wrap up, that would be helpful. I'd ask the Court not to delay a ruling on the basis of the proceedings in Kansas, and I'd ask the Court to find that Exemption 7D does not apply to information that was publicly disclosed at trial. Thank you. Thank you, counsel. The case just argued is submitted, and we want to express our thanks for taking on this issue pro bono. The pro bono counsel are very helpful to the Court, and both of you argued well, and we appreciate it. So we are adjourned. All rise.
judges: Graber, N.R. Smith, Zipps